IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECELIA GARZA,<br><br>  Plaintiff,<br><br>  vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>  Defendant.<br>_____ / | CASE NO. CV-F-04-6291 AWI LJO<br><br>**FINDINGS AND RECOMMENDATIONS RE MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 14) |

Plaintiff Cecelia Garza ("claimant") seeks judicial review of an administrative decision denying her claim for Supplemental Security Income under the Social Security Act, Title XVI ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed her complaint on September 21, 2004 and her opening brief on July 5, 2005. The Commissioner filed her opposition to the appeal on September 7, 2005. Claimant filed a reply brief on September 21, 2005.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for Supplemental Security Income under the Social Security Act on November 28, 2001. (Administrative Record "AR" 52-54.) She alleges a disability onset of April 11, 1999 due to back pain, anxiety and depression. (AR 61.) Claimant's application for benefits was

denied and denied upon reconsideration. (AR 37-40, 42-45.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on June 11, 2003. (AR 16-23.) The Appeals Council denied review. (AR 5-7.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## Claimant's Background and Work Experience

Claimant was born on April 27, 1951. (AR 456.) She completed the eleventh grade. (AR 456.) Her last relevant work as a recreation leader at a school. (AR 457.)

## Medical History

The pertinent medical history is summarized as follows.

Claimant was seen at Community Medical Center from April 2001 to March 2003. (AR 166-191, 194-208, 225-235.) She reported complaints of chronic back pain (see e.g., 179, 182, 196, 199, 202), asthma (see e.g., AR 171, 175, 179), tremors (see e.g., AR 196.) X-rays of her chest on July 8, 2002 for complaints of shortness of breath, showed no evidence of acute cardiopulmonary disease. (AR 170.) An x-ray of her right ankle on May 1, 2002 show no abnormality. (AR 192.)

On February 14, 2002, claimant presented for a psychiatric evaluation with Shireen Damania, M.D. (AR 125-131.) She stated her main complaint was back pain and forgetfulness. (AR 125.) On examination, her mood was mildly depressed, affect was appropriate, she denied suicidal or homicidal ideations. (AR 127.) There as no delusional thinking, or evidence of a thought disorder, she was oriented to time, place and person. Memory intact and attention span within normal limits. (AR 127.) Dr. Damania diagnosed adjustment disorder with depressed mood, personality disorder not otherwise specified with borderline and histrionic features. (AR 127.) She assessed a current GAF as 55 with the highest of 65. (AR 127.) Dr. Damania opined that claimant had no difficulties of memory, concentration, persistence or pace; no evidence of emotional lability. (AR 128.) She opined that she is able to understand, carry out and remember simple as well as one and two step job instructions. She is able to respond appropriately to coworkers, supervisors and the public and respond to work situations. (AR 128.) He opined that her impairments would not limit her ability to engage in work activity. (AR 129.)

On February 18, 2002, claimant appeared for an orthopedic examination with Troy Smith, M.D.

1  a board certified orthopedic surgeon. (AR 132-136.) Claimant complained of low back pain. (AR 132.)
2  On examination, claimant had normal range of motion of the cervical spine, and limited range of motion
3  of the lumbar spine. (AR 133.) Examination of the upper and lower extremities was within normal
4  limits, as was the neurological examination. (AR 134.) He assessed low back pain due to unknown
5  etiology. (AR 135.) Dr. Smith opined that claimant should avoid work requiring repeated bending or
6  heavy lifting. (AR 136.) He opined that she is able to lift 50 pounds occasionally and 25 pounds
7  frequently and able to sit, stand and walk six hours in an eight hour day with rest breaks. (AR 136.)

8  On March 4, 2002, a state agency physician, Carmen Lopez, M.D. completed the physical
9  residual Functional Capacity Assessments form. (AR 137-144.) Dr. Lopez opined that claimant could
10 occasionally lift 50 pounds and frequently 25 pounds and stand/walk/sit six hours in an eight hour day.
11 (AR 138.) Dr. Lopez assessed postural limitations consistent with medium residual functional capacity.
12 (AR 139.) Dr. Lopez did not assess environmental limitations. (AR 141.)

13 On March 5, 2002, state agency physician, Allan Middleton, completed the psychiatric functional
14 capacity form. (AR 145-162.) Dr. Middleton found mild restriction of activities of daily living, mild
15 to moderate difficulties in maintaining social functioning and in maintaining concentration, persistence,
16 or pace and insufficient evidence of any episodes of decompensation. (AR 159-162.)

17 In October 2002, state agency physician, Brian Ginsburg, M.D., found that claimant could
18 perform medium work, with additional environmental limitations as asthma precautions. (AR 211-218.)

19 In a questionnaire dated February 14, 2003, Marc Felmus, M.D. opined that claimant had
20 seizures which precluded her from all work. (AR 219.)

21 In March 2003, Doppler tests of the heart showed no evidence of significant plaque or stenosis.
22 (AR 220.) A CT scan of claimant's head on March 7, 2003 was unremarkable. (AR 222-224.)

23 An MRI of the lumbar spine on April 3, 2003 gave the impression of degenerative changes and
24 no disc herniation or central spinal stenosis. (AR 449-450.)

25 Claimant was seen at Mental Health Service starting in March 2002. (AR 237-402.) Claimant
26 was diagnosed with dysthymia disorder after complaints of anxious mood with impaired concentration,
27 irritable mood, depressed mood, and social isolation and impaired social functioning. (AR 447.) It was
28 recommended that claimant attend classes on stress reduction and coping skills with peers and family.

(AR 446). Prognosis was good. (AR 420, 446). Weekly progress notes from March to October 2002 indicated that claimant showed good participation and positive interactions with others. (AR 236-402). The progress notes covering a six-month period indicated no acute difficulties or significant limitations during these sessions. She was noted to be displaying appropriate social behaviors and had good coping skills. (AR 400, 398, 395, 300, 293, 241.) The most recent progress note, dated March 12, 2003, indicated that claimant participated in a rehabilitation group in which she sustained a positive attitude throughout the activity, laughing and talking with her peers. (AR 239.)

### Hearing Testimony

Claimant testified that as a recreational leader she would do arts and crafts with the children. (AR 457.) The heaviest thing she lifted was 20 pounds. (AR 458.) She said she had a stroke in 1999. (AR 458.) She also has back pain all the time and she fractured her foot. (AR 459.) She could not describe the back pain. (AR 460.) On a scale of 1 to 10 she said her pain was a 10. (AR 460.) She can be on her feet no more than 5-10 minutes. (AR 461.) She can only sit for 5 minutes. (AR 462.) She lies down to relieve pain almost all day. (AR 462.) She also has seizures/tremors of her hands. (AR 463.) She has one a day, four days out of seven. (AR 463.) Her hands get numb. (AR 464.) She takes medicine for asthma. (AR 467.) She coughs and cannot walk far. (AR 467.) She goes to Mental Health for depression and anxiety. (AR 467-468.) She testified she washes dishes, makes coffee, takes care of her personal hygiene, makes breakfast 3 times a week, and cooks other meals. (AR 470-471.)

### ALJ Findings

In his June 11, 2004 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 16.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 22-23):

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
2. The claimant has an impairment or combination of impairments considered "severe" based on the requirements in the Regulations. 20 CFR §416.920(b).
3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

| | | |
|---|---|---|
| 1 | 4. | The claimant's allegations regarding limitations are not totally credible for the reasons set forth in the body of the decision. |
| 3 | 5. | The ALJ carefully considered all of the medical opinions in the records regarding the severity of the claimant's impairments. 20 CFR §416.927. |
| 5 | 6. | The claimant has the following residual functional capacity: to frequently lift and carry ten pounds and occasionally 20 pounds, to stand and walk six hours in an eight hour workday and to sit about six hours in an eight hour workday. Additionally, the claimant can only occasionally stoop. She has no significant mental limitations. |
| 9 | 7. | The claimant's past relevant work as school noontime assistant and recreational leader did not require the performance of work-related activities precluded by residual functional capacity. 20 CFR §416.965. |
| 12 | 8. | The claimant's medically determinable degenerative disc disease of the lumbar spine with low back pain; asthma; foot pain; and major depressive disorder do not prevent the claimant from performing past relevant work. |
| 15 | 9. | The claimant was not under a "disability" as defined in the Social Security act, at any time through the date of the decision. 20 CFR §416.920(e). |

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts

from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) lack of substantial evidence to support a finding of residual functional capacity, (2) failed to properly consider her mental impairment as severe, and (3) improperly discredited her subjective complaints.

## The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3. If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does

---

[1] *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

6

have such an impairment, the claimant is disabled and the analysis ends;[2]

4. If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5. If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In this case, claimant convinced the ALJ that she met the criteria in step one of the sequential analysis; that she has not been engaged in substantial gainful employment.

At step two, the ALJ must determine if the impairment is severe. The ALJ determined that the medical evidence establishes severe impairments of degenerative disc disease of the lumbar spine with low back pain and asthma. (AR 19.)

**The ALJ's Finding of Residual Functional Capacity**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can

---

[2] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985).

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found that plaintiff had the residual functional capacity to perform light work, can occasionally stoop and must avoid concentrated exposure to dust, smoke and chemical fumes. (AR 21.) "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b). If someone can do light work, it is determined that he or she can also do sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567 and 416.967. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

### Claimant's Arguments on Residual Functional Capacity

Claimant argues that the ALJ erred in relying on *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir.1988) (the presumption of continuing non-disability arising from a prior finding of non-disability, can be overcome only by a showing of "changed circumstances" indicating greater disability). She argues that the ALJ failed to review the evidence from the prior decision.

The ALJ, however, specifically found that the presumption of continuing non-disability did not apply because "[t]he claimant has presented new and material evidence warranted a change in her

residual functional capcity. Therefore, the presumption of continuing non-disability does not apply." (AR 16.) Accordingly, the ALJ did not erroneous apply *Chavez v. Bowen*.

Claimant argues that the ALJ found severe asthma and the ALJ should have included environmental restrictions. (Opening Brief p.3.) Here the ALJ did in fact include environmental restrictions in the residual functional capacity:

> "[T]he undersigned finds the claimant retains the following residual functional capacity: to frequently lift and carry ten pounds and occasionally 20 pounds, to stand and walk six hours in an eight hour workday and to sit about six hours in an eight hour workday. Additionally, the claimant can only occasionally stoop and must avoid concentrated exposure to dust, smoke and chemical fumes. She has no significant mental limitations." (AR 21.)

Thus, the ALJ assessed environmental restrictions.

Claimant argues that the ALJ improperly considered the most recent MRI.

Here, the ALJ reviewed the MRI scan: "an MRI scan revealed some degenerative disc disease, but no frank disc herniation, spinal stenosis or foraminal narrowing." (AR 20, 449-450.) There is no error in the ALJ's summarization of the MRI scan because he specifically quoted the conclusion. (AR 449-450.) The ALJ rejected the opinion of the consultative examiner Dr. Smith because Dr. Smith did not have the MRI scan available to him. (AR 21.) The ALJ considered all of the medical evidence. Claimant primarily received conservative treatment consisting of medications. (AR 166-191, 194-208, 225-235). A treatment record in July 2002 noted that a CT scan showed no herniation, protrusion or spinal canal stenosis, and a neurological examination was unremarkable. (AR 187). Claimant's doctor indicated that it was muscle pain and only prescribed medications. (AR 187). Thus, the ALJ adequately considered the MRI and other related medical records of back pain.

Claimant also argues that the ALJ improperly rejected the opinion of treating neurologist, Dr. Flemus, as to her seizures and tremors. (Opening Brief p.4.)

The ALJ rejected the opinion of Dr. Felmus because it was not supported by objective evidence. (AR 18.) The ALJ noted that claimant testified she has tremors which Dr. Felmus described as seizures and that she takes an anti-convulsant medication. (AR 18.) She testified that the mediation does not work, but the ALJ noted that her medication has not been adjusted or another prescribed. (AR 18.) The objective evidence shows that she complained of left sided weakness, but a CT exam of the head on

February 2003 was unremarkable. (AR 222-223.) An ALJ may reject a treating physician's opinion whether or not it is contradicted, if the opinion is "brief and conclusory in form with little in the way of clinical findings to support its conclusion." *Magallanes v Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).

Claimant argues that the ALJ erred in failing to find her mental pathology severe. (Opening Brief p.4.)

The Social Security regulations define severe impairment as an impairment which significantly limits a claimant's "ability to do basic work activities." 20 C.F.R. §§§§ 404.1521, 416.921; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "Basic work activities" are defined as including such capabilities as walking/sitting/standing/lifting, 20 C.F.R. § 404.1521(b)(1),(2); understanding, carrying out, and remembering simple instructions, 20 C.F.R. § 404.1521(b)(3); use of judgment, 20 C.F.R. § 404.1521(b)(4); responding appropriately to supervision, co-workers and usual work situations, 20 C.F.R. § 404.1521(b)(5); and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6). If the impairment does not significantly limit a claimant's physical or mental ability to do basic work activities, the impairment is not severe. *Bustamante v. Massanari*, 262 F.3d at 955

The existence of a mental impairment, however, must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings. 20 C.F.R. §§ 404.1526(b) and 416.926(b); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(B). Signs include psychological abnormalities which can be observed apart from symptoms and must be shown by medically acceptable clinical diagnostic techniques. 20 C.F.R. §§ 404.1528(b) and 416.928(b). Psychiatric signs are medically demonstrable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation and contact with reality, and which must also be shown by observable facts that can be medically described and evaluated. 20 C.F.R. §§ 404.1528(b) and 416.928(b). They are typically assessed by a psychiatrist or psychologist and/or documented by psychological tests. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(B).

The ALJ reviewed all of the medical and clinical evidence. The ALJ noted that claimant had been diagnosed with dysthymic disorder and with major depressive disorder. (AR 18.) He reviewed the clinical records of her group therapy and noted her improvement, participation and social interaction. (AR 18.) The ALJ also noted that progress notes reflected that she did not complain of or exhibit

anxiety or depressive symptoms and had good concentration. (AR 18-19, 241, 249, 254). The ALJ relied upon the psychiatric consultative examiner as to her mental status, normal, appropriate affect, and mildly depressed. (AR 19, 125-128.) Dr. Middleton, a State Agency psychologist, found no significant limitation in claimant's occupational functioning. (AR 145-148.) Dr. Middleton also noted mild restriction of activities of daily living, mild to moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and insufficient evidence of any episodes of decompensation of extended duration. (AR. 149- 162). The ALJ adequately resolved conflicts in the evidence.

Claimant argues that the ALJ should have accepted the consultative examiners finding that she can do no more than simple one and two step tasks. (Opening Brief p.4.)

The ALJ rejected the opinion of Dr. Damania, the consultative psychiatrist. Dr. Damania opined that claimant had no difficulties of memory, concentration, persistence or pace; no evidence of emotional lability. (AR 128.) She opined that she is able to understand, carry out and remember simple as well as one and two step job instructions. Dr. Damania opined that her ability to respond appropriately to coworkers, supervisors and the public and respond to work situations would be impacted by the objective symptoms of back pain. (AR 128.) The ALJ stated because the opinion was inconsistent with the record, as Dr. Damania did not have the opportunity to review claimant's mental health records. (AR 21.) The ALJ reviewed the mental health treatment notes and resolved the conflicting evidence. Thus, it is clear from these findings that the ALJ analyzed the records and medical opinions. It is for the Commissioner to resolve conflicting evidence. *Sanchez v. Secretary of HHS*, 812 F.2d 509, 511 (9th Cir. 1987).

**Past Relevant Work**

Claimant criticizes the ALJ's finding that claimant can perform her past relevant work. Claimant argues that the ALJ erred in failing to use a vocational expert in light of her mental and non-exertional limitations.

At step four, the ALJ determines whether the impairments preclude claimant from performing his past relevant work. At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Pinto v. Massanari*, 249

11

F.3d 840, 844 (9th Cir. 2001). Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62; *Pinto v. Massanari*, *supra*, 249 F.3d 840, 844.

To be capable of performing her past relevant work, the claimant must be able to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; or
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82-61; *Pinto v. Massanari*, 249 F.3d at 844. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82-62 (emphasis added).

The ALJ analyzed the claimant's past relevant work and stated:

> "The evidence in this case establishes that the claimant has past relevant work as a noontime school assistant and recreational leader. The claimant described her work as light level work. Her job as a recreational leader is light level, unskilled work. She testified she worked as a recreation leader for the school district, which involved making ceramics and other arts and crafts. She lifted more than 20 pounds every day." (AR 21.)

Thus, the ALJ acknowledged that claimant's past relevant work *as performed* was greater than light work. 20 CFR §416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.") The ALJ then relied upon the DOT:

> "However, the (*The Dictionary of Occupational Titles*) 195-367.030, defines recreational leader as light level, unskilled work." (AR 21.)

The ALJ used the *Dictionary of Occupational Titles* (D.O.T.) to determine the exertional levels of past work as light.[5] The ALJ determined that claimant could perform her past relevant work as <u>performed in the national economy</u>. The ALJ is not required to also establish that claimant is unable to perform her past relevant work as actually performed. *See, generally*, *Pinto v. Massanari*, 249 F.3d at 845 ("We

---

[5] The *Dictionary of Occupational Titles* "the Secretary's primary source of reliable job information." *See Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990); *cf.*, 20 C.F.R. §404.1566(d)(1). One purpose of the DOT is to classify identified job titles by their exertional and skill requirements. *Terry*, 903 F.2d at 1276.

have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations.")

Claimant argues that the ALJ should have consulted with a Vocational Expert to determine whether she can perform her past relevant work. *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (VE testimony is not required at step four where claimant retains burden of showing she cannot perform her past relevant work).

Here, the ALJ alternatively relied upon the medical-vocational[6] guidelines which found that claimant could perform appropriate light jobs.[7]

Whether evaluated by actual functions or by functions as performed in the national economy, the ALJ properly concluded that plaintiff can perform her past relevant work.

### **Claimant's Testimony**

Claimant argues that the ALJ did not consider her multiple problems when considering her testimony.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

---

[6] The Medical-Vocational Guidelines (also known as "grids") take account of various vocational factors, such as age, education and work experience, and the claimant's residual functional capacity. 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1985); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform.

[7] Claimant argues that the ALJ erred in referring to medical-vocational grid 201.11 for sedentary work. The ALJ should have referred to grid 202.10 for light work. This error is harmless because under either grid, a finding of "not disabled" is appropriate.

concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148.

The ALJ noted that her pain complaints were inconsistent with the objective medical evidence. (AR 20.) He noted that she did not have any x-rays of her back injury from a car accident in 1983. (AR 20.) He noted that the MRI showed degenerative changes, but no frank disc herniation, spinal stenosis or foraminal narrowing. While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d at 857. Moreover, the ALJ noted that claimant does not receive treatment consistent with chronic pain. (AR 20.)

The ALJ also discussed the scope and breath of claimant's activities of daily living. He noted her household chores, cooking, ability to take care of her personal hygiene and grooming, and her daily rehabilitation group. (AR 20, 469-471.) The ALJ noted claimant's answers to the daily activities questionnaire in which she stated the made her husband's lunch, grocery shopped, did laundry, attended church. (AR 20.) *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (An ability to take care of personal needs, prepare easy meals, do light housework, and shop for some groceries is inconsistent with the presence of a condition which would preclude all work activity.) If a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Claimant also argues that the ALJ did not mention the documentary representations.

The Ninth Circuit has long held that ALJ does not need to discuss all evidence presented to him.

1  *Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir.1984). An ALJ need explain why significant and probative evidence has been rejected. *Id.* An example of significant and probative evidence is uncontroverted medical evidence. *Id.* at 1395. The *Vincent* court found controverted medical evidence and lay testimony to be neither significant nor probative. *Id.*

Here, the ALJ considered claimant's medical records, reviewing and consulting records, and her testimony. The record supports a partial discrediting of claimant's testimony. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d at 604. Thus, there is substantial evidence in the record to support the ALJ's partial rejection of claimant's subjective complaints.

Claimant also argues that "[h]er testimony was ignored in the decision for the most part. Much of it was misstated." (Opening brief, p.6.)

Claimant's brief fails to develop these points and the Court will not speculate on them. When an ALJ has made specific findings to justify a decision to disbelieve subjective complaints and the findings are supported by substantial evidence, a court may not second guess the decision. *Fair*, 885 F.2d at 604.

## CONCLUSION

The Court RECOMMENDS as follows:

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Cecilia Garza.

///////
///////
///////
///////
///////
///////
///////

These findings and recommendations are submitted to the United States District Judge Robert to whom this matter is assigned pursuant to 28 U.S.C. § 636(b)(l) and this Court's Local Rule 72-304. Within 10 days of the date of service of these findings and recommendations, plaintiff may file written objections with the Court and serve a copy on all parties and the Magistrate Judge in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 21, 2005**          /s/ Lawrence J. O'Neill
b9ed48                                   UNITED STATES MAGISTRATE JUDGE